UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**RUTH H-Z.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:23-cv-00773-TK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for disability insurance benefits. That final decision was issued by an Administrative Law Judge on May 26, 2023 following a remand from this Court. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 4) and the Commissioner filed a similar motion (Doc. 5). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

    Plaintiff protectively filed an application for disability insurance benefits on August 14, 2018, alleging a disability beginning on June 30, 2010. After initial administrative denials of her application, Plaintiff appeared at a hearing before an Administrative Law Judge on April 27, 2020, The ALJ issued an unfavorable decision on May 4, 2020, and the Appeals Council denied review on December 1, 2020. Plaintiff then brought an action in this Court which resulted in an order of remand dated July 8, 2022. *See Ruth H-Z v. Comm'r of Soc. Sec.*, 2022 WL 2586533 (W.D.N.Y. July 8, 2022).

    Following remand, another hearing was held on April 27, 2023, at which both Plaintiff and a vocational expert, Christine Spaulding, testified. On June 1, 2023, the ALJ issued an unfavorable decision. In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since her alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments including rheumatoid arthritis and left carpal tunnel syndrome. The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform light work except that she could frequently, as opposed to continuously, handle, finger, and feel bilaterally. Plaintiff had past relevant work as a personnel clerk, and the ALJ determined, based on the testimony of the vocational expert, that Plaintiff could still perform that job. As a result, the ALJ concluded that Plaintiff was not, prior to her last insured date, under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises a single issue, stated as follows:

> The ALJ improperly substituted his own medical judgment over that of any physician.

Plaintiff's memorandum, Doc. 4-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 63 years old at the time of the first administrative hearing, first testified that she lived in a house with her husband and that she had a high school education. She had done some consulting work since her alleged onset date but otherwise had not been employed since June 30, 2010. Her work was of a clerical nature from 1978 onward although the position title changed from time to time. Her primary job duties were typing, doing data entry, filing, creating databases, and doing payroll.

Plaintiff said that she stopped working in 2010 because her symptoms had gotten worse in the prior year and she had an opportunity to take an early retirement. There had been times when her hands were so painful that she could not use them. She started seeing a rheumatologist in 2011. Plaintiff testified to an improvement of her symptoms since she stopped working, which she attributed to medication and a change in routine. She still experienced hand pain if she used her hands too much for activities like gardening, and she limited her lifting as well. She also had swelling in the morning but it went down as the day went on, and she did not usually have difficulty lifting and carrying small items. Lastly, Plaintiff said she experienced swelling in her feet if she walked for too long.

At the second administrative hearing, Plaintiff agreed with the ALJ's summary of her earlier testimony, and she also said she had not really used a keyboard since she had stopped working. In her previous job, however, she was using her hands almost all the time. She confirmed that she had been taking time off for physical reasons prior to her retirement.

The vocational expert, Ms. Spaulding, was asked questions about a person with Plaintiff's

vocational profile who could do light work with a restriction to frequent handling, fingering, and feeling. She responded that such a person could do Plaintiff's past work and also a job called data compiler, but there were only 1,000 such jobs in the national economy. If the person were limited to occasional use of the hands, however, neither job could be done. Ms. Spaulding also testified that Plaintiff's past job could be done by someone limited to sedentary work. Being off task for 20% of the time or missing two days of work per month would be job-preclusive, however.

### B.  Medical Evidence

In *Ruth H-Z, supra*, the Court summarized the pertinent medical evidence this way:

> The ALJ cited medical evidence in the administrative record relating to Plaintiff's rheumatoid arthritis, which spanned over the course of multiple years, as part of his analysis. He noted that plaintiff had an initial rheumatological evaluation with Mark E. Schulte, M.D., of Rheumatology Consultants of WNY, P.C., on January 31, 2011, at which she reported progressive swelling, stiffness, and pain in the joints of her hands, wrists, and feet since January of 2009, which had progressed in the six months prior to the appointment. (Dkt. 10 at 400). She also reported numbness and tingling in her hands with partial improvement from a warm shower, activity throughout the day, and ibuprofen. (Id.). Dr. Schulte noted that Plaintiff had inflammatory polyarthritis consistent with rheumatoid arthritis and prescribed Prednisone and Methotrexate. (Id. at 400-01).
>
> A July 1, 2011 treatment note with Dr. Schulte reflects Plaintiff's report that she was 90% improved overall. (Id. at 396). She reported having occasional pain in the hands and feet with activity, but had been active without significant limitation. (Id.). Dr. Schulte noted that Plaintiff was "clinically much improved." (Id.). On a February 3, 2012 follow up, Plaintiff indicated that she had done well since her last visit. (Id. at 392). She reported minimal morning stiffness although noted that she was not being very active in the mornings. (Id.). On June 8, 2012, Plaintiff indicated having to stop her medication for a short time due to an infection and reported worsening stiffness and mild joint swelling, which improved shortly after resumption of the medication. (Id. at 390). She reported being active without limitation. (Id.). An October 12, 2012 treatment record reflects that Plaintiff was doing well without a recent flare of joint swelling and stiffness and though she noted mild achiness in her hands following work, she was not limited to a significant degree. (Id. at 381).
>
> On February 8, 2013, Plaintiff was seen for a follow up and reported no recent flare and that she had been active without limitation. (Id. at 377). On June 28, 2013, and again on November 11, 2013, she reported some mild worsening stiffness in her hands lasting about one hour each morning but indicated that she was not limited by the symptoms and took nothing for the pain. (Id. at 375).

> On March 10, 2014, Plaintiff reported having stopped her medications as a result of dental issues, but restarted after completing her antibiotics. (Id. at 371). On July 7, 2014, Plaintiff reported mild stiffness in the hands and feet without swelling or erythema. (Id. at 362). On November 3, 2014, she again reported mild stiffness in the hands and feet without swelling or erythema, but had been active without limitation. (Id. at 359).
>
> At a March 2, 2015 visit with Dr. Schulte, Plaintiff advised that she had temporarily stopped her medications due to an upper respiratory infection but was back on the medication and reporting little morning stiffness and no joint swelling. (Id. at 355). But on June 10, 2015, Plaintiff reported worsening stiffness and mild swelling in her hands since reducing her dose of Methotrexate. (Id. at 351). She returned to a higher weekly dose but did not notice a significant change. (Id.). On September 30, 2015, Plaintiff reported a compete resolution of her joint symptoms after a medication change to her thyroid hormone replacement dose. (Id. at 345).
>
> On January 27, 2016, Plaintiff reported doing well but with mild stiffness in her hands and feet without swelling or erythema. (Id. at 341). A May 25, 2016 treatment record reported unchanged symptoms with continued mild stiffness in the hands and feet. (Id. at 335). On October 4, 2016, Plaintiff reported having marked worsening stiffness of her hands and wrists after a delay in getting an Enbrel injection, but that her symptoms were resolved upon receipt of the injection. (Id. at 326).
>
> At a January 9, 2017 appointment with Dr. Schulte, Plaintiff indicated that she continued to do well with only mild stiffness in her hands and feet without significant swelling. (Id. at 321). A May 16, 2017 treatment note reported mild stiffness in the hands and feet. (Id. at 316). Plaintiff tried to taper her medication but noticed worsening stiffness in the hands which resolved after increasing the dose. (Id.).
>
> In November 2018, Dr. Schulte opined that Plaintiff had fairly good control of her inflammation but continued to have activity-related pain and stiffness in her hands which limited her ability to return to work. (Id. at 402 ("Despite fairly good control of inflammation over time, Ruth continues to have activity related pain and stiffness in the hands limiting her ability to return to work.")). He noted that she has "been successful at modifying her routine at home to avoid significant flares of symptoms, however, would likely not be able to return to gainful employment." (Id.).

*Ruth H-Z. v. Comm'r of Soc. Sec.*, 2022 WL 2586533, at *4–5 (W.D.N.Y. July 8, 2022).

# C. Opinion Evidence

Only two medical sources provided opinions as to Plaintiff's functional capacity. Her treating rheumatologist, Dr. Schulte, concluded in 2018 that Plaintiff had maintained fairly good control of her inflammation over time but increased activity caused hand pain and limited her ability to return to work. Two years later, Dr. Schulte completed a "Manipulative Limitation Medical Source Statement" indicating that Plaintiff suffered from tenderness, pain, soft tissue swelling, limitation of motion, and reduced grip strength and that she could lift and carry less than five pounds. He did not believe that she could use her hand or fingers more than ten percent of the time and could not reach in any direction more than 20% of the time. (Tr. 480-81). The state agency reviewer, Dr. Brauer, who reviewed the records up through December of 2018, concluded, on the basis of those records, that Plaintiff did not have a severe physical impairment. (Tr. 61-67).

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

As noted above, Plaintiff's memorandum raises only a single issue. She argues that the ALJ crafted the residual functional capacity finding not on the basis of the two medical opinions, both of which he found to be unpersuasive, but on his own lay interpretation of the raw medical data. She further asserts that it is not clear how the ALJ came up with the determination that Plaintiff could frequently handle and finger, and that if she were limited to performing those activities only occasionally, she could not return to her previous work. The Commissioner responds that a reasonable person interpreting the treatment records could have concluded, as the ALJ did, that Plaintiff did have the ability to use her hands on a frequent basis. In reply, Plaintiff argues that this case presents a classic example of "a judge playing doctor and elevating is(sic) lay opinion over that of a physician." Reply Memorandum, Doc. 6, at 6.

This Court has had many occasions to set forth the legal principles which apply to Plaintiff's claim. For example, in *Deanna K. v. Comm'r of Soc. Sec.*, 2023 WL 5443901, at *5 (W.D.N.Y. Aug. 24, 2023), , this Court observed that

> [t]he ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (*quoting Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). But an ALJ is "not a medical professional," and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id*. at 257 (*quoting Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). An ALJ may not, therefore, substitute his own judgment for competent medical opinion, *see Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017), and an ALJ's RFC determination "without a medical advisor's assessment is not supported by substantial evidence," *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." *Benman*, 350 F. Supp. 3d at 257 (*quoting Matta*, 508 F. App'x at 56) (internal quotation marks omitted). Moreover, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker v. Berryhill,* No. 15-CV-943, 2018 WL 1173782, at *4 (W.D.N.Y. March 6, 2018).

The ALJ rejected Dr. Schulte's very restrictive opinion as to Plaintiff's ability to use her hands and fingers, noting that the symptoms Dr. Schulte relied on were not reflected in the treatment notes up to her last insured date and Plaintiff did not report any changes in her activities of daily living. He did not find the state agency reviewer's opinion persuasive as to there being no limitations in her handling and fingering, however, because her "rheumatoid arthritis and left carpal tunnel syndrome cause more than minimal restriction in her ability to perform basic work activity functions through the date last insured." (Tr. 494). The ALJ observed that it was reasonable to conclude that full-time work would have caused Plaintiff to

experience some limitations, and he gave Plaintiff "extreme deference to [her] subjective complaints of pain, numbness, weakness, and lingering effects of overuse of her hands" even though he believed that the treatment records did not support those complaints. *Id.*

The Court finds this to be a very close case. The result reached by the ALJ could be characterized as simply picking a middle position between the two expert opinions, one of which supported no limitations in handling and fingering, and one of which supported fairly extreme limitations. The ALJ also provided an explanation, based on the treatment records and Plaintiff's description of her activities of daily living, for concluding that she was neither as capable as Dr. Brauer believed her to be, nor as limited as Dr. Schulte described her. There are many examples in the case law of a court upholding a residual functional capacity finding concerning manipulative limitations which is based on balancing the expert opinions and other pertinent evidence even if the finding does not correspond perfectly with either opinion, and especially where it represents giving the claimant the benefit of the doubt and crediting her subjective testimony. *See, e.g., Tanya W. v. Comm'r of Soc. Sec.*, 2021 WL 4942092 (N.D.N.Y. Oct. 22, 2021).

The problem with making such a determination in this case, however, is the fact that the other evidence, and even the treatment records, do not necessarily support the conclusion that Plaintiff was able to continue to use her hands on a frequent basis in the work setting. Her testimony on this issue was clear. She missed work before she retired due to pain in her hands caused by performing her job duties. She only returned to work part-time in a consulting capacity because she was not required to use her hands in the same way as when she was working full-time. She experienced morning stiffness in her hands lasting for up to an hour. None of her daily activities relied on by the ALJ to discount further limitations in the use of her hands required the frequent use of hands for handling and fingering. The treatment records do not indicate an absence of symptoms but show that she experienced symptoms, although mild, even from engaging in daily activities not requiring the frequent use of her hands. In short, there is nothing in this record that would have permitted the ALJ to conclude, once he rejected Dr. Brauer's opinion, that the limitations he found to exist extended to no more than a restriction to frequent use of the hands. Without some additional evidence or explanation on this issue, the ALJ's decision is not supported by substantial evidence, and a remand is required. *See, e.g., Walls v. Kijakazi*, 2022 WL 4377379 (N.D. Ind. Sept. 22, 2022) (explaining that it is error for an ALJ to equate activities of daily living with the ability to perform job functions on a daily basis where there is no correlation between the two).

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 4), **DENIES** the Commissioner's motion (Doc. 5), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**